## WILLIAM W. KANE v. THE HIBERNIA MUTUAL FIRE INSURANCE COMPANY.

In an action on a fire insurance policy containing a clause inserted therein after its execution, making the loss under it, if any, payable to G. W. B., mortgagee, and other clauses providing that if the property insured should be sold or conveyed, without the consent of the company in writing, the policy should be void, and that a judgment in foreclosure proceedings should be deemed an alienation of the property, one of the defences being that the plaintiff wilfully set fire to the property in question. The court charged the jury—1. That the plaintiff might recover the whole amount of the insurance money mentioned in the policy, notwithstanding the clause making a part of the loss payable to the mortgagee, if the jury believed that the value of the premises equalled or exceeded the amount insured. 2. That in order to make out the defence of burning by design, the defendant was bound to establish it beyond a reasonable doubt, and by the same measure of proof that would be required to convict the plaintiff, if tried on an indictment charging that offence. 3. That a decree in an ordinary foreclosure suit, without further proceedings, would not preclude the plaintiff from maintaining his action—*Held*, that the charge was right.

This was an action brought on a fire insurance policy issued by the defendant to the plaintiff, a copy of which policy is hereto annexed, and forms part of this state of the

case.  The declaration was in the usual form of *assumpsit.*
The pleas were—

*First.* The general issue.

*Second.* A plea that the policy was made void by reason of
a breach of the conditions therein contained, prohibiting
alienations.

*Third.* A special plea averring that the plaintiff did make
an attempt to defraud the company, contrary to the condi-
tions of the policy, by which it was made void.

Pursuant to an order made by the Chief Justice, a bill of
particulars was given by the defendant to the plaintiff of the
defences under the second and third pleas.

It is stipulated and agreed that the pleadings, including
the bill of particulars (to which was annexed, as part thereof,
a copy of decree in action on foreclosure proceedings) may be
referred to and used, if necessary, on the argument as part
thereof.

The case came on for trial at the September Term of the
Burlington county circuit, before his Honor, Justice Wood-
hull, and a jury.

The execution of the policy of insurance was admitted by
the defendant, and was also proven by the plaintiff.

The plaintiff proved the destruction by fire of the building
insured, during the continuance of the policy, and the value
thereof.   He also gave evidence tending to show that he had
kept, performed and fulfilled all the clauses and conditions of
the said policy of insurance on his part to be kept, performed
and fulfilled.

The defendant, on its part, gave evidence tending to show
that the building insured was burned by design, with the
knowledge and procurement of the plaintiff; and that the
plaintiff did make an attempt to defraud the company, con-
trary to a provision and condition of the said policy, by which
it was made void.

After the testimony was closed, the defendant's counsel
moved the court to non-suit the plaintiff, on the ground that
it appeared that before the happening of the loss, to recover

which this suit was instituted, proceedings in foreclosure, a certified copy of which had been produced by the defendant and offered in evidence, had been commenced on a mortgage held by one Harriet B. W. Carter, given by the plaintiff herein, and covering the property insured, and that in such foreclosure proceeding a decree (copy of which decree is annexed to the bill of particulars as above stated,) had been entered in favor of the complainant and against the defendant, the plaintiff herein, and that, by reason of said decree, the policy of insurance upon which this action is founded, became, was and is void. Defendant's counsel thereupon asked the court to charge the jury—

*First*—That by the terms of a clause inserted in said policy, in the body thereof, after its execution, the loss under it, if any, was payable to J. Wardell Brown, mortgagee, to the amount of $1500; that no recovery could be had in this action by the plaintiff, beyond the sum of $1500, with interest thereon, which, by the policy, remained payable to him.

And the said justice refused to charge as requested by defendant's counsel, and did charge the jury that the plaintiff in this action might recover the whole amount of the insurance money mentioned in the said policy, notwithstanding the clause making the loss payable to J. Wardell Brown, mortgagee, to the amount of $1500, if the jury believed that the value of the premises equaled or exceeded the amount insured.

To which said charge and instructions of the said justice, the counsel of the defendant then and there excepted.

*Second*—The counsel for the defendant further asked the said justice, at the same time, to charge the said jury that, as to the defence of burning by design, while the burden of proof was on the defendant to establish this defence, it was only necessary to do so by the fair weight or preponderance of the evidence. And the said justice then and there refused so to charge the said jury, and did then and there charge that, in order to make out such defence, the defendant was bound to establish the same beyond a reasonable doubt, and by the

same measure of testimony that would be necessary to convict the plaintiff if tried under an indictment charging that offence.

To which charge and instruction of the said justice, the counsel for the defendant then and there excepted.

And the counsel for the defendant then and there further requested the said justice to charge the jury that, if they were satisfied by the evidence that before the fire occurred by which the loss claimed and sought to be recovered in this action was occasioned, proceedings in foreclosure as aforesaid had been commenced against the said plaintiff on the mortgage of the said Harriet B. W. Carter, for the foreclosure or sale of the mortgaged premises which embraced the property mentioned and described in the policy of insurance declared in, and that a judgment or decree (copy of which judgment or decree is annexed to the bill of particulars as above stated) had been obtained in the said proceedings against the said plaintiff prior to the said fire, that then there could be no recovery by the plaintiff, and that their verdict must be for the defendant, because, by the terms of the policy, it was to be void, in case there was alienation of the property insured, and because it is therein further provided that judgment in foreclosure proceedings should be deemed an alienation of the property ; and the said justices then and there refused so to charge the said jury, and did then and there charge that said judgment or decree, in said foreclosure proceedings, would not preclude the plaintiff from maintaining this action.

The jury, after hearing the testimony and arguments of the counsel and the charge of the court, returned a verdict for the plaintiff, for the sum of $3261.33, being the full amount claimed in the said policy, with interest thereon, after the same became payable by the terms thereof.

It was ordered that the following questions, presented in the above stated case, should be reserved for the opinion of the Supreme Court, counsel of the respective parties consenting :

*First*—Did the court err in instructing the jury that the plaintiff might recover the whole amount of the insurance

money mentioned in said policy, notwithstanding the said clause making the loss, if any, payable to J. Wardell Brown, mortgagee, to the amount, $1500, and in refusing to charge on this point, as requested by the defendant's counsel, as stated above ?

*Second*—Did the court err in charging the jury, that as to the defence of burning by design, testimony to establish it must satisfy the jury of the fact beyond a reasonable doubt, and be such as would convict the plaintiff in case he had been indicted for that offence, and in refusing to charge as requested by defendants' counsel in this regard, as stated above ?

*Third*—Did the court err in refusing to non-suit the plaintiff, on motion of defendant's counsel, on the ground stated above, and in refusing to charge the jury, as requested by defendants' counsel, in regard to alienation of the property insured, and in charging the jury in relation to the same matter as above set forth ?

In case the charging of the court, and the refusal to charge and non-suit as requested, on these points reserved, was correct in law, judgment will be entered on the verdict of the jury in favor of the said plaintiff, and against the said defendant; if incorrect, then a *venire de novo* shall be awarded, and a new trial granted, with leave, however, to the said parties to sue out a writ of error to the Court of Errors and Appeals.

Argued at February Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiff, *F. Voorhees.*

For the defendants, *Coult.*

The opinion of the court was delivered by

WOODHULL, J. Upon the foregoing state of the case, these questions were reserved for the opinion of the Supreme Court :

*First*—Did the court err in instructing the jury, that the plaintiff might recover the whole amount of the insurance money mentioned in the policy, notwithstanding the clause making the loss, if any, payable to J. Wardell Brown, mortgagee, to the amount of $1500?

It was admitted, on the argument, that this instruction was in accordance with the ruling of the Court of Errors in the *State Insurance Co.* v. *Maackens, March Term*, 1876.

The *second* question is, did the court err in charging the jury, that as to the defence of burning by design, testimony to establish it must satisfy the jury of the fact beyond a reasonable doubt, and be such as would be sufficient to convict the plaintiff in case he had been indicted for that offence?

Greenleaf (2 *Greenl. Ev.*, § 408,) states the rule to be, that " where the defence is that the property was wilfully burnt by the plaintiff himself, the crime must be as fully and satisfactorily proved to the jury, as would warrant them in finding him guilty on an indictment for the same offence." Citing *Thurtell* v. *Beaumont*, 1 *Bing.* 339, (8 *E. C. L.* 337.) That was an action against an insurance company to recover the value of goods alleged to have been destroyed by fire in the plaintiff's warehouse. At the trial, before Park, J., the defence set up was, that the plaintiff had wilfully set fire to the premises, or had caused them to be set fire to. In charging the jury, the learned judge directed them, that before they gave a verdict against the plaintiff, it was their duty to be satisfied that the crime of wilfully setting fire to the premises was as clearly brought home to him in this action, as would warrant their finding him guilty of the capital offence, if he had been tried before them on a criminal charge." A verdict having been found for the plaintiff, a new trial was moved for on the ground that the jury had been misdirected. It was urged in support of the motion, that in order to discharge the defendant from liability, it was not necessary the jury should entertain the same certainty with respect to the plaintiff's guilt, as would justify them in convicting him on a

criminal charge; and that without reference to the defence set up, they would, in that case, as in any other, be warranted in finding against the plaintiff, if he failed to make out his case to their entire satisfaction.

But the court were clearly of opinion that the direction was proper, and refused to grant the rule on that ground.

In *Chalmers* v. *Shackell et al.*, 6 *Carr & P.* 475, which was an action on the case for libel, in charging the plaintiff with the forgery of a certain bill of exchange, the same doctrine was applied. On a plea of justification, stating in substance that the plaintiff had been guilty of forging, &c., Tindal, C. J., said to the jury : " We cannot consider the plea in any other way, or on any other kind of evidence, than if we were trying the plaintiff for the offence alleged in it."

In a similar case, *Wilmett* v. *Harmer et al.*, it was held by Denman, C. J., that a plea of justification to a libel, in which the defendant justifies on the ground that the plaintiff was guilty of bigamy, requires the same strictness of proof as is required on the trial of an indictment for bigamy. 8 *Carr & P.* 695.

In the Supreme Court of the State of New York, in an action of slander for accusing the plaintiff of perjury, the judge at the Circuit Court having charged the jury, in substance, that the same testimony was necessary to prove the truth of the alleged slander, as to sustain a criminal prosecution for the perjury, it was held, on a motion for a new trial, that the charge was correct. Sutherland, J., speaking for the court, says : " I understand the rule to be, as laid down by the judge, that where, in an action of slander, a defendant justifies a charge of perjury, one witness is not sufficient to prove the truth of the charge, and sustain the justification. The evidence must be the same as required to convict a defendant on an indictment for perjury. There must be either two witnesses, or one witness corroborated by material and independent circumstances." *Woodbeck* v. *Keller*, 6 *Cow.* 118.

The ruling in this case has been followed and approved in the later cases of *Clark* v. *Dibble*, 16 *Wend.* 601; and *Hopkins* v. *Smith*, 3 *Barb.* 599. The same doctrine has been held in Pennsylvania, in the case of *Steinman* v. *McWilliams*, 6 *Barr* 170; in Indiana, in the cases of *Byrket* v. *Monohon*, 7 *Blackf.* 83; and *Lanter* v. *McEwan*, 8 *Ib.* 495; in Illinois, in the case of *McConnell* v. *Del. M. S. Ins. Co.*, 18 *Ill.* 228; in Tennessee, in *Coulter* v. *Stuart*, 2 *Yerg.* 225; in Maine, in *Brayor* v. *Boyle*, 30 *Me.* 475; and *Butman* v. *Hobbs*, 35 *Me.* 227; and it is stated in *May on Insurance*, § 583, that the same rule was adopted by the Supreme Court of Florida in the recent case of *Shultz* v. *Pacific Insurance Co.*, 2 *Ins. L. J.* 495. Mr. May, however, does not approve the rule laid down in *Thurtell* v. *Beaumont*, and expresses the opinion that reason and the weight of authority are the other way. In support of this view, he refers to a number of very respectable authorities, most of which were cited by defendant's counsel on the argument.

In *Schmidt* v. *New York Union Mutual Fire Insurance Co.*, 1 *Gray* 529, one of the cases referred to, and very similar in all respects to the one now before us, the judge refused to charge the jury that they must be satisfied, beyond any reasonable doubt, that the plaintiff purposely set fire to the property insured, before they could find for the defendants, but did instruct them that they must be satisfied, as reasonable men, of the truth of the allegations made by the defendants, before they could find in their favor. On exceptions by the plaintiff, it was held that there was no error in this instruction. "There seems," says Dewey, J., in delivering the opinion of the court, "really to be but the slightest difference between the instructions actually given and those asked for by the plaintiff, understanding the terms 'beyond a reasonable doubt' in their proper sense, and under the limitations stated in the case of *Commonwealth* v. *Webster*, 5 *Cush.* 320." If the instructions, as given, were right, and were in sub-

stance the same as those called for by the plaintiff, it would seem to follow that the court below might, without error, have instructed the jury in the very terms of the plaintiff's request. But, however that may be, the point actually decided was, merely, that the court could not be *required*, in such a case, to instruct the jury in the precise form asked for by the plaintiff, viz.: that to warrant a finding against him, "they must be satisfied, &c., beyond a reasonable doubt." The case, therefore, if it cannot be regarded as inferentially recognizing the rule in *Thurtell* v. *Beaumont*, is clearly of no value as an authority against it.

The instructions given by the court below were all that the plaintiff had a right to require under that rule. They were, in legal effect, fully equivalent to the usual formula in criminal cases. For I take it to be metaphysically impossible that a jury should be satisfied, as reasonable men, of the truth of a given fact, without being at the same time satisfied of its truth beyond a reasonable doubt. See *Aeby* v. *Rapelye*, 1 *Hill.* 9.

In *Washington Union Insurance Co.* v. *Wilson*, 7 *Wis.* 169, referred to in May on Insurance, and cited on the part of the defendant in this case, the defence being that the insured wilfully set fire to the property, the court held that the rule as to the degree or quality of evidence required to make out the defence was not the same as on an indictment, and that the jury should find for the party in whose favor the testimony preponderated. The only authorities cited in support of this doctrine were *Stark. on Ev.*, *Greenl. on Ev.*, and *Hoffman* v. *West. Mar. and Fire Ins. Co.*, 1 *La. An.* 216.

In this Louisiana case the court, without referring to any case or giving any reason for their opinion, simply say: "We think that the jury should not have been instructed to require the same full proof to discharge an insurer as would be necessary to convict the assured for arson under our statute." This, of course, is plainly in opposition to the rule adopted at the circuit, and, as far it goes, sustains the ruling in 7 *Wis.*

As to the citations from Starkie and Greenleaf, they seem

to me not full enough to present the real doctrine held by those learned authors upon the point in question.

Mr. Starkie says : " It is to be observed that the measure of proof sufficient to warrant the verdict of a jury varies much, according to the nature of the case.

" Evidence which satisfies the minds of the jury of the truth of the fact in dispute, to the entire exclusion of every reasonable doubt, constitutes full proof of the fact.    *    *    * The distinction between full proof and mere preponderance of evidence is, in its application, very important.    In all criminal cases whatsoever, it is essential to a verdict of condemnation that the guilt of the accused should be fully proved ; neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact, to the exclusion of all reasonable doubt.

" But in many cases of a civil nature, where the right is dubious, and the claims of the contesting parties are supported by evidence nearly equipoised, a mere preponderance of evidence on either side may be sufficient to turn the scale."

In the case referred to, the citation closes at this point, and is supposed to show that, in all civil cases, the rule, as to the measure of proof required, is that a mere preponderance on either side is sufficient to warrant a verdict in favor of that side.    That such is the general rule in civil cases, there can be no doubt.    And that the author, in the passage just quoted, was merely stating this general rule is apparent, if not from the passage itself, at least from what follows in immediate connection with it.    Having said that " in many cases of a civil nature, &c., a mere preponderance of evidence on either side may be sufficient to turn the scale," Mr. Starkie goes on to say, " this happens, as it seems, in all cases where no presumption of law, or *prima facie* right, operates in favor of either party ; as for example, where the question between the owners of contiguous estates is, whether a particular tree near the boundary grows on the land of one or of the other. But even where the contest is as to civil rights only,

a mere preponderance of evidence, such as would induce a jury to incline to the one side rather than the other, is frequently insufficient. It would be so in all cases where it fell short of fully disproving a legal right once admitted or established, or of rebutting a presumption of law. If a party claimed as devisee against the heir-at-law, full proof of the devise, with all its formalities, would be essential, &c. Again, where the law raises a presumption in favor of the fact, the contrary must be fully proved, or, at the least, such facts must be proved as are sufficient to raise a contrary and stronger presumption. Thus the law presumes a man to be innocent of a crime until his guilt be proved." 1 *Stark. on Ev.* *478, *479 (*5th Am. ed.*, 1834, *Phila.*)

Speaking of matters in defence of an action on a policy of insurance, the same author uses this language: " The defendant may, under the general issue, adduce evidence to avoid the policy on the ground of fraud. The legal presumption in favor of innocence in this, as well as in all other cases, renders full and satisfactory proof necessary." 2 *Stark. on Ev.* *648.

In the passage cited from Greenleaf the author is treating of the law of evidence in criminal cases, and in stating the distinction between civil and criminal cases, in respect to the degree or quantity of evidence necessary to justify the jury in finding their verdict, says: " In civil cases, their duty is to weigh the evidence carefully, and to find for the party, in whose favor the evidence preponderates, although it be not free from reasonable doubt. But in criminal trials, the party accused is entitled to the benefit of the legal presumption in favor of innocence, which, in doubtful cases, is always sufficient to turn the scale in his favor. It is, therefore, a rule of criminal law, that the guilt of the accused must be fully proved." 3 *Greenl. on Ev.*, § 29.

But in this section the author, with respect to civil cases, manifestly intended nothing more than to state the general rule applying to them, without pausing to define, in that connection, the limitations of the rule. That he had already

done, either in express terms, or by fair inference, in the volume relating specially to the law of evidence in civil cases.

The very class of cases to which the one then before the court belonged, he had expressly excluded from the operation of the general rule in civil cases, citing as his authority for so doing the very case, (*Thurtell* v. *Beaumont*,) of which the court, in *Schmidt* v. *Wash. Ins. Co.*, say, (citing this author and Mr. Starkie, and *Hoffman* v. *West. F. & M. Ins. Co.*, as their authorities,) that it appears to them to be " contrary to the authorities, and cannot be sustained on principle." See 2 *Greenl. on Ev.*, § 408, quoted above.

Another class of cases expressly excluded from the operation of the general rule in civil cases, are actions of libel and slander, in which there have been special pleas in justification imputing crime.   Of such cases, Mr. Greenleaf remarks, that " to support a special plea in justification, where *crime* is imputed, the same evidence must be adduced as would be necessary to convict the plaintiff upon an indictment for the crime imputed to him ; and it is conceived, that he would be entitled to the benefit of any reasonable doubt of his guilt, in the minds of the jury, in the same manner as in a criminal trial."   2 *Greenl. Ev.* 426.

The use which has been made of the names of these eminent writers on the law of evidence, in opposition to the rule in *Thurtell* v. *Beaumont*, seems to me to be justified neither by the language, as interpreted by themselves, nor by any just deduction from their principles, or their reasoning.

Instead of impugning that rule, it will be found that both of them do, in fact, either expressly or by necessary inference, sanction it.  *Wightman* v. *West. Mar. & Fire Ins. Co.*, 8 *Rob.* (*La.*) 442, is to the same effect as the case already noticed ; *Hoffman* v. *Same Co.*, 1 *La. An.* 216.

Another case on the same side, referred to in *May on Insurance*, p. 721, is *Scott* v. *Home Ins. Co.*, 1 *Dillon* (*C. Ct. U. S.*) 105.   The action was on a fire policy, and the defence, that the plaintiffs wilfully burned their own property covered by the policy.   It was held that in such an action so de-

Kane v. Hibernia Mutual Fire Insurance Co.

fended, the rule in civil, and not the one in criminal cases, as to the quantum of proof, applies; but that in view of the nature of the charge, the evidence to establish it ought to be such as clearly to satisfy the jury of its truth.

After stating the difference between the ordinary rule in civil actions, and the rule in criminal cases as to the measure of proof required, Dillon, J., instructed the jury as follows: "The court instructs you, that it is not necessary that the degree of proof should be the same as if the plaintiffs were on trial under an indictment for wilfully burning the property to defraud the insurance companies. On the contrary, as between the rule in criminal and the rule in civil cases, as above defined, it is the rule in civil cases that is to be your guide in this case. But the charge is a grave one. The act charged is one which men, in general, will not commit, but of which men are sometimes guilty; in view of which, the court instructs you, that in order to justify you in finding that the plaintiffs themselves burned, or caused the property to be burned, the legal evidence, taken altogether, must be such as *clearly satisfies* you of the truth of the proposition. It need not be such as to exclude all doubt, but it should be such as to satisfy your minds and judgments that they did, or caused or procured the act in question to be done. On this point, the decided cases are conflicting, but the foregoing seems, to the court, to express the sound and true rule of law on the subject."

These instructions, as it seems to me, are open to the criticism, that while they are formally in favor of the application of the ordinary rule in civil cases, namely, that a mere preponderance of evidence, one way or the other, is sufficient to warrant a verdict, the rule actually laid down for the guidance of the jury, in respect to the measure of proof required to sustain the defence, is, in substance and effect, the same as the rule in *Thurtell* v. *Beaumont*.

I submit, with great deference to the eminent jurist who delivered, and the learned judges who approved these instructions, that evidence which "clearly satisfies" a jury, which *satis-*

fies their minds and judgment as to the truth of any proposition, although it may not be such as to exclude all doubt, must, nevertheless, of necessity, exclude every doubt which would prevent a settled belief of that proposition ; and this is precisely what I understand to be indicated by the phrase " reasonable doubt."

It follows, from what has been said, that while the instructions to the jury, in the case just referred to, were, to a certain extent, wrong in theory, namely, in assuming the case to be within the ordinary. rule applied to civil cases, and in assuming that the measure of proof which the jury were instructed to require before they could find against the plaintiffs, was the measure of proof required in ordinary civil cases. They were, nevertheless, practically right. The degree of proof indicated as being necessary to warrant a verdict against the plaintiffs in that case being, in fact, the same as would have been sufficient to convict them on an indictment for the offence imputed to them.

The only remaining case to be noticed on the side of the defendant is, Sloan v. Gilbert, decided very recently in the Court of Appeals of Kentucky. Law and Equity Reporter, April 5th, 1876. Although the court in that case disapprove and reject the rule laid down in Thurtell v. Beaumont, they do not hesitate to admit that it is supported by the great weight of authority, English and American.

Cofer, J., delivering the judgment of the court, says : " There can be no doubt but such is, and has long been the rule in England, and that it has been recognized by the courts of last resort in a majority of the states of the Union, and is approved by 2 Greenleaf's Ev. 426 ; Townsend on Slander and Libel, (2d ed.) 644, and Hilliard."

In regard to the reasonableness of the rule against which much has been said in the case just referred to, and in other cases, I remark that, whether applied to criminal or civil cases, the reason of the rule seems to me to be the same, and the rule itself rests upon precisely the same foundation, viz. : that legal presumption in favor of innocence, a presumption

which is not, as some seem to suppose, an arbitrary contrivance to screen the guilty when under indictment, but a conclusion of law drawn from general experience of human conduct, and designed to protect the innocent—a presumption of such potency that it can be overcome by nothing short of full and satisfactory proof—that is, by the highest measure of proof defined by the common law, as distinguished from that by mere preponderance of evidence. As the rule in question merely recognizes and gives effect to this universal presumption of law, I cannot think that it is either unreasonable or unjust.

The third question presented is, whether a decree for sale in an ordinary foreclosure suit is, in the sense of the policy, " a judgment in foreclosure proceedings" which " shall be deemed an alienation of the property." To show the connection in which these expressions occur in the policy, I quote from it as follows : " And provided further, that if any other insurance has been or shall hereafter be made upon the said property, and not consented to by this company in writing hereon, or if the said property shall be sold or conveyed, either partially or wholly, or if this policy shall be assigned either before or after loss or damage shall occur, without the consent of the company obtained in writing thereon, or if the assured shall make any attempt to defraud the company, then, and in every such case, this policy shall be null and void. A judgment in foreclosure proceedings, or sale under an execution, shall be deemed an alienation of the property."

This is purely a question of construction.

It was clearly the intention of the parties that " an alienation of the property " should render the policy null and void.

But what, precisely, is meant by the phrase " an alienation of the property ? " Was it to be an actual transfer of the title to the property, or merely some proceeding or series of proceedings tending to that result? The word itself, " alienation," is not used elsewhere in the policy. But we are not left without an indication, at least, of the meaning intended to be conveyed by it. It had just been provided that, " if

the said property should be sold or conveyed, the policy should be null and void." Then follows, immediately, the provision that a judgment in foreclosure proceedings or sale under an execution, shall be deemed an alienation, &c., probably referring, as it seems to me, to the alienation just before mentioned as a ground of forfeiture, namely, by sale or conveyance of the property. I take the true meaning of this part of the policy to be the same as it would be if, for the words "shall be deemed an alienation of the property," there should be substituted the words "shall be deemed such a sale or conveyance of the property as aforesaid." The fair deduction, from the language of the policy is, that the alienation intended was such as would amount to an actual transfer of the title, and that by the phrase, " a judgment in foreclosure proceedings," was meant some proceeding which, of itself, would effect such a transfer. This result, a decree of strict foreclosure would accomplish.

But a mere decree for sale on a foreclosure suit, without further proceedings, could have no such effect. My conclusion upon the whole case is, that the charge of the court upon the several points reserved was correct, and that judgment must therefore be entered on the verdict of the jury in favor of the plaintiff.